**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

AMERICAN TUNABOAT
ASSOCIATION,
1 Tuna Lane, Suite 1
San Diego, CA 92101

*Plaintiff,*
v.

WILBUR ROSS, in his official capacity as
Secretary of the U.S. Department of
Commerce,
Room 5851
1401 Constitution Avenue, NW
Washington, DC 20230

NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION,
U.S. Department of Commerce,
Room 5128
1401 Constitution Avenue, NW
Washington, DC 20230

NATIONAL MARINE FISHERIES
SERVICE,
U.S. Department of Commerce,
Room 14555
1315 East-West Highway
Silver Spring, MD 20910

*Defendants.*

</td><td>

Case No. _____

</td></tr>
</table>

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      Plaintiff American Tunaboat Association ("ATA") challenges an unlawful decision from

the National Marine Fisheries Service ("NMFS") denying ATA and its members "applicant" status

and rights associated with consultation under the Endangered Species Act ("ESA") for the U.S.

purse seine tuna fishery in the western and central Pacific Ocean ("the Fishery").  Left intact, this decision would indefinitely deprive ATA and its members of invaluable procedural rights during the ongoing and future consultations.  ATA's exercise of those rights is essential to ATA's ability to protect and advance the interests of itself and its members.

2.      The ESA consultation process ensures that federal agencies do not take any action that would jeopardize the continued existence of endangered or threatened species or adversely affect critical habitat.  Often, consultation is triggered by agency actions that would authorize proposed or ongoing private activities (*e.g.*, fishing).  Because consultation may result in changes to proposed or continuing activities, persons whose activities may be impacted are entitled to participate in the process as applicants.  Among other things, applicants review and comment on draft documents and may thereby use their experience and expertise to question and inform agency findings, conclusions, and measures *before* they become final.

3.      Presently, NMFS is preparing a new biological opinion ("BiOp") in the consultation process for the Fishery to, among other things, replace the existing BiOp.  The new BiOp will cover the continued authorization of fishing operations in the Fishery.  The new BiOp will include an incidental take statement ("ITS") that will impose multiple requirements, including limits on the number of interactions ATA-member vessels participating in the Fishery may have with endangered and threatened species.

4.      BiOps and related requirements have serious, and sometimes paralyzing, impacts on fisheries.  For example, fisheries may be subject to closure if NMFS finalizes strict measures or a legally infirm BiOp that third parties challenge.  *See, e.g.*, *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 731-32 (9th Cir. 2017) (observing that after being sued by a third party, NMFS withdrew its "no jeopardy" finding and reinstated annual turtle-interaction

caps for the shallow-set longline fishery); 84 Fed. Reg. 11,654 (Mar. 28, 2019) (showing NMFS closed the shallow-set longline fishery for the remainder of 2019 after vessels reached 17 interactions with an ESA-listed sea turtle). Fishery closures cause economic harm to vessel owners and the industries that depend on their catch. Closures can also cause substantial ecological harm, as less-regulated foreign fisheries may increase their operations to fill demand left unmet by closed U.S. fisheries.

5.     Profit margins can be, and often are, razor thin for some ATA-member vessels. For these members especially but also for all other ATA members, the findings, conclusions, and measures NMFS will adopt in its new BiOp are of utmost importance. ATA and its members are thus insisting that NMFS affords them their due applicant status and rights to ensure that the agency appropriately considers industry expertise and produces a legally defensible BiOp.

6.     By refusing to grant ATA and its members applicant status and the related rights to which they are entitled under the ESA, NMFS has acted unlawfully in violation of the Administrative Procedure Act ("APA"). To ensure that ATA's and its members' procedural rights under the ESA are protected, the Court should vacate NMFS's unlawful decision, issue a declaratory judgment that ATA and its individual members are applicants under the ESA, and immediately enjoin NMFS from further violating ATA's and its members' rights as applicants during the agency's ongoing development of the BiOp for the Fishery. Further, given the impending completion of the BiOp and corresponding time-sensitive nature of the injunction, ATA respectfully requests that the Court grant the preliminary injunction requested below on an expedited basis in accordance with Local Civil Rule 65.1(d).

## I.      JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal questions), 5 U.S.C. §§ 701-706 (APA), and 28 U.S.C. §§ 2201-02 (declaratory judgments and injunctive relief).

8.      This action is brought pursuant to the APA, 5 U.S.C. §§ 701-706, and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  Under these provisions, the Court may (a) provide declaratory judgments providing that NMFS's decisions are unlawful, and that ATA and its members are applicants under the ESA, (b) vacate NMFS's unlawful final decision, and (c) enjoin NMFS from further violating ATA's and its members' rights during the ongoing development of the BiOp for the Fishery and for future BiOps related to the Fishery.

9.      Sovereign immunity does not apply because ATA is not seeking damages.  5 U.S.C. § 702; *Clark v. Library of Cong*., 750 F.2d 89, 102 (D.C. Cir. 1984).

10.     Venue is properly vested in this judicial district under 28 U.S.C. § 1391(b) & (e), where Defendants are officers or employees of the United States and reside in this district, and a substantial part of the events and omission giving rise to this action occurred in this district.

## II.     THE PARTIES

11.     Plaintiff ATA is a nonprofit mutual benefit corporation whose mission is to advocate on behalf of its members for a robust, sustainable, fairly-managed, and economically strong tuna fishery.  ATA's members include representatives of all large U.S. flag purse seine vessels operating in the Fishery for which NMFS is developing the BiOp.  ATA represents it members in, among other things, regulatory matters impacting the fishery, international trade negotiations, meetings on the conservation and management of stocks, and legislative campaigns like the

4

"Dolphin-safe Tuna" labeling movement of the 1970s.  This association has existed since 1917, albeit having operated under a different name and entity status on several occasions.

12.     ATA brings this action on its own behalf and on behalf of its members.  ATA's members are subject to numerous legal requirements, including requirements directly attributable to the existing BiOp, and require multiple authorizations to lawfully participate in the Fishery.  ATA and its members have been—and continue to be—injured by NMFS's decision denying ATA applicant status and related rights.  NMFS has been working to complete a BiOp without input from ATA members for over six months.  Each day NMFS continues this work is an additional day that ATA and its members are shut out from the process (that will soon be completed) and precluded from exercising their procedural rights to protect their interests and livelihoods.

13.     ATA has a long history of participating in federal agency processes concerning the Fishery to protect the interests of its members, including the investment of institutional resources.  NMFS's exclusion of ATA and its members precludes them from exercising legal rights to protect their interests in the Fishery.   The procedural injury, and other related injuries, from this maladministration of the ESA by NMFS acting on behalf of the U.S. Secretary of Commerce has significant implications on the stability and viability of the Fishery upon which ATA's members depend for their livelihoods.  NMFS's unlawful actions deprive ATA and its members of their ability to protect these and other important interests.

14.     On or about February 28, 2017, Defendant Wilbur Ross was sworn in as the current Secretary for the U.S. Department of Commerce.  Wilbur Ross, in his official capacity as Secretary of Commerce, directs all business of the Department of Commerce, including the National Oceanic and Atmospheric Administration ("NOAA") and NMFS.  In his official capacity as Secretary of Commerce, Wilbur Ross is responsible for NMFS's proper administration of the ESA consultation

process for the Fishery, NMFS's decision denying ATA and its members' request for applicant status and related rights, and for the associated statutory violations alleged in this Complaint.  He is sued in his official capacity only.

15.     Defendant NOAA is an agency of the U.S. Department of Commerce with supervisory responsibility for NMFS.  The Secretary of Commerce has delegated responsibility to administer the ESA to NOAA, which in turn has sub-delegated that responsibility to NMFS.

16.     Defendant NMFS is an agency of NOAA under the purview of the U.S. Department of Commerce.  NMFS administers and implements the provisions of the ESA, including those related to the consultation process, on behalf of the Secretary of Commerce.   NMFS's actions administering and implementing the ESA must be consistent with the statute and comply with the APA, among other laws.[1]

## III.     LEGAL FRAMEWORK

17.     ATA members operating in the Fishery are heavily regulated by NMFS.  Statutes with which ATA members must comply to lawfully operate in the Fishery include, among others, the High Seas Fishing Compliance Act, 16 U.S.C. § 5501, *et seq.*; the South Pacific Tuna Act,[2] 16 U.S.C. § 973, *et seq.*; the Western and Central Pacific Fisheries Convention ("WCPFC") Implementation Act,[3] 16 U.S.C. § 6901, *et seq.*; the ESA, 16 U.S.C. § 1531, *et seq.*; the Marine Mammal Protection Act, 16 U.S.C. § 1361, *et seq.*; and the Magnuson-Stevens Fishery

---

[1] This complaint uses "NMFS" as shorthand for all Defendants in this action given their collective responsibility for the unlawful actions described.
[2] This Act implements the Treaty on Fisheries Between the Governments of Certain Pacific Island States and the Government of the United States of America, also known as the South Pacific Tuna Treaty.
[3] This Act implements the Western and Central Pacific Fisheries Convention and allows for the implementation of subsequent conservation management measures adopted by the Commission.

Conservation and Management Act, 16 U.S.C. § 1801, *et seq.*  In addition, ATA members are subject to the regulations implementing each of these statutes.

18.     To lawfully operate in the Fishery, ATA members must obtain numerous authorizations, including, among others, the following licenses and permits:  (1) High Seas Fishing Compliance Act permits to fish in international waters, *see* 50 C.F.R. Part 300, Subpart R; (2) vessel licenses to fish in the Licensing Area for the South Pacific Tuna Treaty, *see* 50 C.F.R. Part 300, Subpart D; and (3) WCPFC Area Endorsements to fish for highly migratory species in the high seas of the WCPFC Convention Area, *see* 50 C.F.R. Part 300, Subpart O.  When operating in the Fishery, ATA members are also subject to the interaction limits and other requirements in the BiOp for the Fishery.  *See, e.g.*, Final Biological Opinion under section 7 of the Endangered Species Act on the effects of the U.S. tuna purse seine fishery in the western and central Pacific Ocean on listed sea turtles and marine mammals, at 141-45 (Nov. 1, 2006) ("2006 BiOp").

### A.     ADMINISTRATIVE PROCEDURE ACT

19.     The APA provides judicial review for persons, including corporations and associations, who have been adversely affected or aggrieved by a final agency action for which there is no other adequate remedy in a court.  5 U.S.C. §§ 551(2), 701-702, 704.  NMFS's actions under the ESA in this case are subject to judicial review under the APA.

20.     Under the APA, the reviewing court must "hold unlawful and set aside agency action . . . found to be," among other things, either (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (2) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or (3) "without observance of procedure required by law." *Id.* § 706(2).  In addition, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).  "[T]o prevent irreparable injury, the reviewing court . . .

may issue all necessary and appropriate process . . . to preserve the status or rights pending conclusion of the review proceedings." *Id.* § 705.

21.    The denial of a request for applicant status under the ESA constitutes a final agency action subject to review under the APA. *See generally Hawaii Longline Ass'n v. NMFS*, 281 F. Supp. 2d 1, 16 (D.D.C. 2003); *cf. Bennett v. Spear*, 520 U.S. 154, 176-78 (1997) (holding that similar claims of agency maladministration challenging a BiOp were reviewable under the APA).

### B.    ENDANGERED SPECIES ACT

22.    The ESA, 16 U.S.C. § 1531 *et seq*., establishes a legal framework for preventing the extinction of plant and animal species. The purpose the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . and to take such steps as may be appropriate to achieve the purposes of the treaties and conventions [named in the ESA]." *Id.* § 1531(b).

23.    The Secretary of Commerce is responsible for administering the ESA for marine species and habitat and has delegated this administrative role to NOAA's Assistant Administrator for Fisheries, or the head of NMFS. *See* 51 Fed. Reg. 19926, 19926 (June 3, 1986).

24.    Acting on behalf of the Secretary of Commerce and NOAA, NMFS identifies and lists marine species that qualify as "endangered" or "threatened" based on certain criteria and designates critical habitat for listed species. 16 U.S.C. § 1533; 50 C.F.R. § 402.01(b). Based on these listings and designations, the ESA requires and prohibits certain conduct. *See, e.g.*, 16 U.S.C. § 1538(a)(1)(B)-(C) (prohibiting the "take" of listed species).

25.    "Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section

referred to as an 'action agency') is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species" that is determined to be "critical." *Id.* § 1536(a)(2), (a)(4). Accordingly, the ESA requires a federal agency to consult with NMFS before taking action that may adversely affect ESA-listed species or their critical habitat. *Id.*

26.    This process begins with informal consultation, where NMFS and the action agency or applicant determine whether the proposed action requires formal consultation. *See* 50 C.F.R. § 402.13(a)-(b). Where the action "is not likely to adversely affect listed species or critical habitat, the consultation is terminated, and no further action is necessary." *Id.* § 402.13(a).

27.    In some instances, the action agency or applicant must complete a biological assessment ("BA") to determine whether the action is likely to adversely affected listed species or critical habitat. *Id.* § 402.12(a), (k). Where the BA determines that the action is not likely to have such adverse effects, consultation is complete. Absent this determination in a BA, the action agency must engage NMFS in formal consultation, the result of which is a biological opinion ("BiOp").[4] *See id.* §§ 402.12(k)(1), 402.14(a)-(b). BiOps include ITSs, which impose binding requirements that directly and indirectly impact the action being consulted on. *Id.* § 402.14(i).

28.    The BiOp "constitutes a permit authorizing the action agency to 'take' the endangered or threatened species so long as it respects the Service's 'terms and conditions.'" *Bennett v. Spear*, 520 U.S. 154, 170 (1997). For the Fishery, the BiOp's ITS is what permits vessels to take endangered and threatened species as an incident of fishing. Without the ITS, vessels are not authorized any take of endangered or threatened species.

---

[4] The biological assessment also addresses whether the action would adversely affect proposed species to be listed and proposed designations of critical habitat. 50 § 402.12(a), (k).

29.     "In the case of an agency action involving a permit or license applicant," the applicant

receives numerous procedural rights.  16 U.S.C. § 1536(b)(1)-(3).  During informal consultation,

applicants:

a.   May veto the action agency's choice of a designated non-Federal representative for

informal consultation, 50 C.F.R. § 402.08;

b.   Are to be involved in informal consultation "to the greatest extent practicable" and

have a right to receive and review the conclusions and recommendations from this

process, *id.* § 402.10(a), (c), (e); and

c.   Must receive written notification and explanation if the 180-day completion-time

requirement for a biological assessment needs to be extended, *id.* § 402.12(i).[5]

30.     During formal consultation, applicants:

a.   Have the right to "submit information for consideration during the consultation,"

*Id.* § 402.14(d);

b.   Must   approve   agency-requested   extensions   of   time   to   complete   formal

consultation, and have the right to review BiOps, *id.* § 402.14(e);

c.   Have the right to discuss with NMFS and the action agency NMFS's review and

evaluation during formal consultation, "the basis for any finding in the biological

opinion," and the "availability of reasonable and prudent alternatives (if a jeopardy

opinion is to be issued)," *id.* § 402.14(g)(5);

---

[5] Prospective applicants also have the right to "be involved throughout the consultation process."
50 C.F.R. § 402.11.

    d.   Have the right to use their expertise to consult with NMFS in identifying reasonably prudent alternatives and measures, *id.*;

    e.   Are entitled to review and comment on the draft BiOp before NMFS issues a final BiOp, *id.* § 402.14(g)(8); and

    f.   Are entitled to having NMFS "in good faith honor [their] procedural rights" as applicants, including fairly considering their comments, *Hawaii Longline Fishery v. NMFS*, Case No. 01-765 (CKK/JMF), 2002 WL 732363, at *14 (D.D.C. Apr. 25, 2002) ("*HLA*").

31.    In addition, NMFS "must in good faith honor an applicant's procedural rights," including fairly considering applicants' comments. *Id.*

32.    An "applicant" is "any person, as defined by section 3(13) of the [ESA], who requires formal approval or authorization from a Federal agency as a prerequisite to conducting the action." 50 C.F.R. § 402.02.

33.    Both "person" and "action" are broadly defined by the ESA and its implementing regulations, respectively.  *HLA*, 2002 WL 732363, at * 9.  The ESA defines "person" to include "an individual, corporation, partnership, trust, association, or any other private entity."  16 U.S.C. § 1532(13).  ESA regulations define "action" as "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas." 50 C.F.R. § 402.02; *cf.* 16 U.S.C. § 1536(a)(2) (explaining that an action includes "any action authorized, funded, or carried out by" an agency.  Actions include, among other things, "the promulgation of regulations" and "the granting of licenses, contracts, leases, easements, right-of-way, permits, or grants-in-aid."  50 C.F.R. § 402.02.

34.     When consultation is triggered for actions pertaining to the management of the Fishery, NMFS consults with itself, acting as both the action agency and the consulting agency. *HLA*, 2002 WL 732363, at \*13.  This is sometimes referred to as "internal consultation."

## IV.     STATEMENT OF FACTS

### A.     THE FISHERY AND BIOLOGICAL OPINION

35.     The Fishery is comprised of large U.S. flagged purse seine vessels—between 175 and 260 feet in length—that commercially fish for skipjack and other tuna species in the western and central Pacific Ocean.  The geographic area of the Fishery encompasses the economic exclusive zones ("EEZs") of certain Pacific Island Nations, as well as the high seas (international waters) within defined boundaries.

36.     Purse seine fishing uses a net called a seine that hangs vertically in the water with its bottom edge held down by weights and its top edge buoyed by floats.  A purse line passes through rings at the bottom of the net that, when pulled, draws the rings close to one another and prevents schooling fish from swimming down to escape the net.

37.     There are currently 31 vessels participating in the Fishery.  Over half of these vessels have been certified "sustainable" by the Marine Stewardship Council ("MSC").  To receive this certification, vessel operations must satisfy the MSC Fisheries Standard, which "reflects the most up-to-date understanding of internationally accepted fisheries science and management" and is "reviewed and developed in consultation with scientists, the fishing industry, and conservation groups."    *The   MSC   Fisheries   Standard*,   https://www.msc.org/en-us/standards-and-certification/fisheries-standard.

38.     Representatives of all vessels participating in the Fishery are members of ATA.

39.     To operate lawfully throughout the Fishery, ATA members must obtain numerous authorizations from NMFS.

40.     All ATA members actively participating in the Fishery must hold and comply with terms contained within these authorizations, which include permits, licenses, and endorsements, among other things.

41.     Multiple endangered and threatened species reside in the western and central Pacific Ocean, and vessels operating in the Fishery have the potential to interact with them.  Although the Fishery's interactions with ESA-listed species have been modest, NMFS has developed a BiOp for the Fishery.  81 Fed. Reg. 41,239, 41,242 (June 24, 2016) (indicating that raw data from observer reports "indicates low levels of interactions with some protected species since 2008").

42.     NMFS issued the currently effective BiOp for the Fishery in 2006.  The 2006 BiOp describes the action subject to consultation under the ESA, in part, as follows: "NMFS IFP proposes to issue regulations for continued authorization of the U.S. purse seine fishery (fishery) operating in the WCPO . . . . Accordingly, this consultation includes the effects of the continued authorization of all purse fishing subject to U.S. jurisdiction in the WCPO."  2006 BiOp, at 3-4.

43.     The 2006 BiOp includes interaction limits, reasonable and prudent measures, and terms and conditions, which all relate to the regulation of purse seine fishing operations in the Fishery.

44.     Although these requirements are directed to NMFS as the action agency, NMFS has adopted regulations, protocols, guidance, policy, and other documents to implement these requirements, which apply either directly or indirectly to Fishery participants.

45.     Permittees, licensees, and other authorization holders that participate in the Fishery, like ATA's members, are required to adhere to these requirements as prerequisites and conditions for participating in the Fishery.

46.     The 2006 BiOp requires NMFS to reinitiate consultation if the Fishery exceeds interaction limits, new information shows that the Fishery affects listed species or critical habitat in a way or an extent not considered in the 2006 BiOp, the agency action is modified in a manner that causes an effect to listed species or critical habitat not considered in the 2006 BiOp, or a new species is listed or critical habitat designated that may be affected by the action. *See* 2006 BiOp, at 146; *see also* 50 C.F.R. § 402.16.

47.     Sometime before June 24, 2016, based in part on new observer data, NMFS reinitiated consultation under the ESA for the Fishery.  81 Fed. Reg. at 41,242 ("NMFS also is developing a biological assessment for the U.S. WCPO purse seine fishery in anticipation of reinitiating ESA Section 7 [formal] consultation for one or more species . . . as may be warranted.").

48.     Since reinitiating consultation under the ESA for the Fishery, NMFS has neither requested nor allowed substantive input from Fishery participants on the biological assessment or biological opinion.

49.     On August 23, 2018, NMFS announced its intention to complete an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA") for "the continued authorization of the U.S. purse seine fishery in the WCPO."  83 Fed. Reg. 42,640, 42,641 (Aug. 23, 2018).  "NMFS recognize[d] that consultation and collaboration with U.S. purse seine vessel owners and operators on the approaches for allocation of effort in this fishery is needed, and sees this notice of intent to develop an EIS as an initial step in that process."  83 Fed. Reg. at 42,643.

Under the regulations implementing NEPA, like those for consultation, NMFS must consult and collaborate with the regulated community. *See, e.g.*, 40 C.F.R. § 1501.7(a)(1).

50.     ATA and its members have participated in the scoping process for the planned EIS by participating in webinars and/or submitting written comments.

51.     During the webinars, which occurred on or about September 11, 2018, and September 14, 2018, NMFS staff indicated that the agency was fully engaged in formal consultation under the ESA and preparing a BiOp for the Fishery.  NMFS staff also stated that the agency could complete the BiOp as early as May 2019 but stated they could not provide exact deadlines.

52.     These comments during the webinar constituted the first time that NMFS provided public statements indicating that it was preparing a BiOp for the Fishery.  Before the webinar, ATA was unaware that NMFS had begun preparing a new BiOp for the Fishery.

53.     The new BiOp will replace the 2006 BiOp in its entirety.  To the extent that the new BiOp does not entirely replace the 2006 BiOp, it will replace substantial portions of the 2006 BiOp.

54.     The new BiOp will consider the effects of the continued authorization of purse seine fishing subject to U.S. jurisdiction in the western and central Pacific Ocean.

55.     The new BiOp will include binding requirements that will ultimately regulate and otherwise impact ATA-member operations in the Fishery.

56.     The new BiOp will include an ITS and will include interaction limits, reasonably prudent measures or alternatives, and terms and conditions, among other requirements.

57.     The new findings, conclusions, measures, alternatives, terms and conditions, and other contents of the new BiOp will have the effect of changing the regulatory landscape for Fishery

participants, which hold permits, licenses, and other authorizations to conduct activities falling within the purview of that BiOp (*i.e.*, the continued operation of the Fishery).

58.     ATA represents all members in the Fishery.  Associations like ATA have been deemed to be applicants for purposes of consultation, including by this Court.  *See HLA*, 2002 WL 732363, at *9.  ATA is an applicant for the ongoing consultation and future consultations under the ESA related to the Fishery.

59.     ATA members, as permittees, licensees, and holders of authorizations operating within the Fishery that will regulated and impacted directly and indirectly by the new BiOp, are applicants for the ongoing consultation and future consultations under the ESA related to the Fishery.  50 C.F.R. § 402.02 ("Applicant refers to any person, as defined in section 3(13) of the Act, who requires formal approval or authorization from a Federal agency as a prerequisite to conducting the action.").

60.     The 2006 BiOp recognizes that Fishery participants—which are directly or indirectly subject to the interaction limits, measures, terms and conditions, and all other aspects of the BiOp—are applicants under the ESA.  2006 BiOp at 142 ("Only incidental take by the Federal agency or applicant that complies with the specified terms and conditions [in this BiOp] is authorized.").

### B.     ATA MEMBER SOUTH PACIFIC TUNA CORPORATION'S (SPTC'S) APPLICANT REQUESTS

61.     On or about November 19, 2018, ATA member SPTC submitted a letter to NMFS asserting its applicant status and requesting information in accordance with the procedural rights applicants receive during consultation under the ESA.

62.     SPTC stated that it represents and manages multiple large U.S. flag purse seine vessels, each of which has numerous authorizations, including licenses and permits, that authorize these vessels to participate in the Fishery in pursuit of tuna.  Relying on applicable statutes, regulations, guidance, and case law, SPTC then explained that it qualified as an applicant for purposes of the ongoing consultation.  SPTC highlighted this Court's decision resolving this issue for the participants of another fishery.  *HLA*, 2002 WL 732363, at * 9.

63.     As an applicant, SPTC requested that it be afforded all associated rights, including, but not limited, to receiving the existing schedule for completion of the BiOp, a copy of the biological assessment, a copy of the draft BiOp, and a reasonable amount of time to review and comment on the draft BiOp.

64.     On or about December 17, 2018, NMFS issued a decision denying SPTC's request and indicating that NMFS does not believe that SPTC qualifies as an applicant under the ESA.  NMFS wrote that the *HLA* decision was inapplicable because SPTC "does not represent the entire U.S. WCPO purse seine fishery."  NMFS also stated that, regardless, this Court's decision in *HLA* was "wrongly decided."

65.     On or about January 28, 2019, a letter characterized as an appeal of NMFS's decision denying applicant status was directed or sent to the Honorable Timothy C. Gallaudet, identified as the Acting Undersecretary of the Department of Commerce for NOAA; U.S. Secretary of Commerce Wilbur Ross; and other governmental officials.  This letter faulted NMFS's denial decision for giving preferential treatment to members in a similarly situated fishery and for what appeared to be the agency's direct defiance of directives from Secretary Ross to work more closely with Fishery participants.  Further the letter requested that SPTC be made an applicant so that it

could provide its firsthand expertise about the Fishery and otherwise participate in the consultation process.

66.     On or about March 6, 2019, NMFS issued a second letter explaining that no procedures exist for administrative review of a denial of applicant status under the ESA and that, regardless, NMFS's original denial letter was correct.  The letter states that while NMFS is aware of this Court's decision in *HLA*, NMFS is unwilling to extend applicant status to other fisheries, "particularly to individual vessel owners having different interests."

### C.     AMERICAN TUNABOAT ASSOCIATION'S (ATA'S) APPLICANT REQUEST

67.     On or about February 7, 2019, ATA filed a letter requesting that NMFS recognize that the ATA is an applicant under the ESA and provide ATA with all rights and information applicants receive.  ATA observed that each of its members qualified independently as applicants.  Relying on the governing statutes, regulations, guidance, and case law, ATA explained that it qualified as an applicant for purposes of NMFS's ongoing consultation for the Fishery.

68.     ATA observed that, unlike SPTC, *it does* "represent[] all of the large U.S. flag purse seine vessels fishing in the Pacific Ocean, including those operating [in the Fishery]."  ATA referenced this Court's decision ordering NMFS to grant applicant status to ATA's counterpart in the longline fishery—the Hawaii Longline Association ("HLA").  *HLA*, 2002 WL 732363.  Like SPTC, ATA's letter emphasized that its participation was necessary to ensure consistency with this Court's decision granting HLA applicant status.

69.     In its letter, ATA also noted that NMFS has largely kept ATA and its members in the dark about the Section 7 consultation process, noting that ATA only learned about the agency's preparation of the BiOp through its members who participated in the webinar for the NEPA scoping process.

70.     On or about March 5, 2019, NMFS issued a decision denying ATA's request for applicant

status.  Unable to distinguish ATA's request for applicant status from that of HLA's in this Court's

past decision, NMFS stated that this Court's decision in *HLA* was "wrongly decided" and that the

agency was "unwilling to extend that decision to other fisheries."   NMFS provided additional

reasons for its denial similar to those already rejected by this Court in the *HLA* decision.

71.     NMFS's letter suggested that it might consider granting ATA some of the rights afforded

to an applicant but would not recognize ATA as an applicant such that ATA would receive all

associated rights, including the right to participate as an applicant in future consultations for the

Fishery.

72.     NMFS also suggested that the opportunity to provide input on the EIS counseled against

granting ATA applicant status.  This Court in *HLA* rejected NMFS's identical offers in lieu of

applicant status.  *HLA*, 2002 WL 732363, at *13 ("HLA's opportunity to comment on the [Draft]

EIS does not justify curtailing its procedural rights in the ESA consultations.").

73.     On information and belief, NMFS has not recognized a single applicant for the ongoing

consultation for the Fishery and will not consider recognizing any person as an applicant for this

consultation process.

## CAUSES OF ACTION

### COUNT ONE:  NMFS VIOLATED THE APA (5 U.S.C. § 706) BY DENYING ATA AND ITS MEMBERS APPLICANT STATUS AND RELATED RIGHTS UNDER THE ESA.

74.     Plaintiff ATA incorporates by reference all preceding paragraphs.

75.     The APA requires a reviewing court to hold unlawful and set aside final agency action for

which there is no other adequate remedy in a court.  Unlawful agency action under the APA

includes, among other things, actions that are arbitrary and capricious, otherwise without observance of procedure required by law, and unlawfully withheld or unreasonably delayed.

76.     NMFS's decision denying ATA and its members applicant status constitutes a final agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704. NMFS's final action caused injury to, and otherwise aggrieved, ATA and its members, who wish to exercise their applicant rights to protect their interests.

77.     The ESA and implementing regulations require NMFS to afford certain rights to applicants during the consultation process addressing their activities. The ESA and implementing regulations also require NMFS to use the best available scientific and commercial evidence in the consultation process.

78.     The ESA, implementing regulations, agency guidance, and this Court's decision in *HLA* establish that ATA is an applicant under the ESA and has all associated rights. These authorities and other case law also establish that ATA's members are independently applicants under the ESA and entitled to all associated rights.

79.     NMFS's decision against ATA and its members frustrates the purposes of the ESA, implementing regulations, and the consultation process generally.

80.     NMFS's decision denying ATA's request for applicant status violates the APA as arbitrary and capricious because, among other things, NMFS's decision is inconsistent with applicable law, NMFS's past (and present) practice, and the requirement that NMFS use the best available scientific and commercial evidence. For these and other reasons, NMFS has unlawfully withheld action granting ATA and its members applicant status and related rights.

81.     NMFS has no legal authority to shut ATA and its members out of the consultation process. NMFS's decision doing so and NMFS's ongoing consultation without ATA's and its members' participation constitute agency action without observance of the procedures required by the ESA. NMFS's decision therefore violates the APA.

82.     NMFS's conduct has already caused, and continues to cause, immediate and irreparable harm to ATA and its members.  ATA and its members have been entitled to participate in the consultation process for the Fishery since its initiation.  They remain entitled to participate in the remainder of the formal consultation process, including by, at a minimum, being afforded a reasonable amount of time to submit information to NMFS; review NMFS's findings, conclusions, and draft BiOp; and to submit comments on the draft BiOp for NMFS's good-faith consideration. *HLA*, 2002 WL 732363, at *14.

83.     Without immediate judicial intervention, NMFS would almost certainly complete the BiOp before this action is resolved on the merits.  At that point, ATA's and its members' rights as applicants described in detail above would have been fully deprived for this BiOp.  As such, they would ultimately be subject to interaction limits, measures, and other requirements decided without Fishery participants' input and that are based on findings and conclusions that equally lacked Fishery-participant scrutiny.  This would leave ATA and its members with the unreasonable option of suing to invalidate for procedural and substantive error the BiOp upon which they depend for their continuing lawful operation in the Fishery.  Each day that passes without judicial intervention makes this outcome more likely.

84.     No monetary damages can remedy these harms.  But these harms would be remedied if ATA and its members are immediately recognized to be applicants and allowed to exercise their

rights to engage in the proactive, cooperative effort envisioned by the ESA and its implementing regulations.

85.     NMFS would suffer no meaningful harm from allowing ATA and its members to participate as applicants in the consultation process.

86.     There is a strong public interest in governmental agencies adhering to the law.

87.     It is also in the public interest to allow ATA and its members to participate in the consultation process because that participation improves the process and results.  As NMFS has publicly highlighted in a presentation entitled "Lessons Learned (Consultation Process): NOAA Fisheries Perspective," "[c]ommunication with the applicant (Hawaii Longline Association) and incorporation of the applicant's substantive comments was [sic] useful."  *See* https://static1.squarespace.com/static/56c65ea3f2b77e3a78d3441e/t/56cf79622eeb81664c35858 2/1456437602419/CCC_2013-02_009_E_CaseStudyi.pdf.     ATA's participation in the consultation process for the Fishery would be similarly, if not more, useful to NMFS, the public, and the resources protected under the ESA.

88.     Accordingly, ATA is entitled to the declaratory, injunctive, and the other relief requested below.

**PRAYER FOR RELIEF**

Plaintiff ATA respectfully requests that this Court:

A. Declare that NMFS's decision denying ATA's request for applicant status under the ESA is unlawful in violation of the APA because that decision is inconsistent with the ESA, its implementing regulations, this Court's decision in *HLA*, and other applicable law.  Declare that ATA and each of its individual members are applicants under the ESA for purposes of

the ongoing consultation for the Fishery and for all future consultations related to the Fishery.

B.  Vacate NMFS's decision denying ATA's request for applicant status.

C.  On an expedited basis, in accordance with Local Civil Rule 65.1(d), issue an order preliminarily enjoining Defendants from continuing to violate existing law and ATA's and its members' rights as applicants under the ESA, and directing NMFS to provide ATA and its members, at minimum, a reasonable amount of time to (1) review NMFS's BA, subsequent findings, conclusions, and draft BiOp; and (2) submit supplemental information and comments on the draft BiOp for NMFS's good-faith and otherwise reasonable consideration.

D.  Issue an order permanently enjoining Defendants from violating the law and ATA's and its members' rights as applicants under the ESA for consultations related to the Fishery.

E.  Award Plaintiff ATA its reasonable costs, including attorney fees, incurred in this action pursuant to the Equal Access to Justice Act and any other available legal provisions. 5 U.S.C. § 504; 28 U.S.C. § 2412.

F.  Provide such additional and further relief as this Court deems proper and just.

DATED: April 10, 2019                          Respectfully Submitted,


By:     /s/ Megan H. Berge

Megan H. Berge
DC Bar No. 983714
Jared R. Wigginton*
DC Bar No. 1033684
Adam Dec
DC Bar No. 888187500
Baker Botts L.L.P.
1299 Pennsylvania Ave.
Suite 1300
Washington, D.C. 20004
(202) 639-7700

*Counsel for American Tunaboat Association*

*\*Application for admission pending*